**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4394-13T3

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

    Plaintiff-Respondent,

v.

K.N.S.,

    Defendant-Appellant.

_____

IN THE MATTER OF E.J.S.,
    a minor.

_____

APPROVED FOR PUBLICATION

July 17, 2015

APPELLATE DIVISION

        Submitted May 20, 2015 — Decided July 17, 2015

        Before Judges Fuentes, Ashrafi, and Kennedy.

        On appeal from the Superior Court of New
        Jersey, Chancery Division, Family Part,
        Camden County, Docket No. FN-04-423-13.

        Joseph E. Krakora, Public Defender, attorney
        for appellant (Jennifer L. Gottschalk,
        Designated Counsel, on the brief).

        John J. Hoffman, Acting Attorney General,
        attorney for respondent (Melissa H. Raksa,
        Assistant Attorney General, of counsel; Reid
        Adler, Deputy Attorney General, on the
        brief).

        Joseph E. Krakora, Public Defender, Law
        Guardian, attorney for minor (Caitlin A.

McLaughlin, Designated Counsel, on the
brief).

The opinion of the court was delivered by

ASHRAFI, J.A.D.

This is an appeal from an order finding abuse or neglect of a seven-month-old boy who was severely injured by the boyfriend of defendant-mother K.N.S. The issue is whether defendant-mother neglected the child by allowing the boyfriend to be his babysitter for several hours while she worked. We conclude there was sufficient evidence for the trial court's finding of neglect, and so, we affirm.

                              I.

Defendant gave birth to the child when she was nineteen years old. The biological father, who was eighteen, initially did not acknowledge paternity, and he is not involved in this case. A few months after the child was born, defendant began living with a man who was nine years older than she was. Defendant knew the man had been convicted of a drug offense. She did not know he had also been convicted of a sexual offense against a very young child.

The boyfriend was unemployed. Defendant had a job at a McDonald's restaurant near her apartment. The child had been enrolled in a daycare program until November 16, 2012, when he was diagnosed with croup. Following the illness, defendant did

not have medical clearance for him to return and also lacked convenient transportation to take the child to daycare. For a period of about three weeks, defendant left the child in the boyfriend's care when she worked.

Shortly before Thanksgiving in 2012, the boyfriend left the child alone in the bathtub, and the child fell and hurt his head. When defendant came home from work, she saw that the child had a large bump on his head.

On December 9, 2012, defendant came home from her job during a break and saw that the boyfriend was bathing the child, but the child was blue and shivering. He was very cold to the touch. For about twenty minutes, she tried to heat the child's body by holding him near a heater. Defendant called a friend for advice and then decided to take the child to a hospital emergency room, but she first walked back to the McDonald's to tell the manager she would have to miss the rest of her work shift. She returned to her apartment and called a taxi for transportation to the hospital.

At the hospital, the child's body temperature was eighty-eight degrees. Doctors determined that he had severe injuries. His skull was fractured, as well as several ribs and parts of his vertebrae. He had healing fractures of his forearm and leg indicating that some of the injuries had occurred at least days

in the past.  The hospital made a child abuse referral to the Division of Child Protection and Permanency (the Division).

When interviewed at the hospital, defendant was extremely distraught about the nature and severity of her son's injuries. She said she did not know how or when the injuries occurred, except the incident a few weeks earlier when the child fell in the bathtub.  Since the child was born, she had taken him to doctors' appointments as necessary, including on November 16, 2012, for treatment of his croup.  The doctors had not detected any injuries.  She also said the child was usually a happy baby but had been whining and crying and not sleeping through the night for the past few days.  She and her boyfriend were the only caretakers for the child during the past several weeks. Once she learned the child was injured, she insisted that the boyfriend would leave her apartment and not have any further contact with the child.

The Division obtained a court order to take temporary custody of the child.  Upon the child's release from the hospital a week later, the Division placed him in the care of a registered nurse.  Subsequently, the Division placed the child with defendant's sister while defendant enrolled in parenting classes and counseling.

On April 10, 2013, the Family Part conducted a fact-finding hearing pursuant to N.J.S.A. 9:6-8.44 to adjudicate the charges of abuse or neglect against defendant and the boyfriend. The Division relied on documentary evidence, specifically, the Division caseworker's detailed report, medical records from the hospital, and the report of a physician who specialized in child abuse. Defendant and the boyfriend did not testify. The only witness was the Division caseworker.

The Family Part found that the boyfriend had physically abused the child and had caused the injuries. The court further found that defendant had neglected the child in that she left him in the care of the boyfriend with knowledge that he had a criminal past, that he had allowed the child to fall and hit his head in the bathtub, and that he had repeatedly cursed and made derogatory comments about the child in defendant's presence. In addition, the court found that defendant had neglected the child by failing to act expeditiously in getting him medical attention when she found him blue, cold, and shivering on December 9, 2012. The court was skeptical that defendant had no idea that the child had suffered injuries at the hands of the boyfriend before that date, given the extent and severity of the injuries found at the hospital.

On appeal, defendant argues she did not harm the child herself, and the evidence gave no indication that she knew the boyfriend had physically abused him.

A reviewing court must defer to the Family Part's findings of fact and conclusions of law based on those findings. N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007). "[F]indings by the trial judge are considered binding on appeal when supported by adequate, substantial and credible evidence." N.J. Div. of Youth & Family Servs. v. Z.P.R., 351 N.J. Super. 427, 433 (App. Div. 2002) (quoting Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484 (1974)).  This deferential standard of review is especially appropriate because of the Family Part's "specialized knowledge and experience in matters involving parental relationships and the best interests of children."  N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 427 (2012).

An appellate court may expand its highly deferential scope of review when the alleged error does not involve credibility of witnesses but turns on the trial court's application of the law to the underlying facts.  G.L., supra, 191 N.J. at 605. Nonetheless, an appellate court should only disturb the trial

court's findings and conclusions if they are "so wide of the mark that the judge was clearly mistaken." Ibid.

N.J.S.A. 9:6-8.21(c)(4) defines a child as abused or neglected when the child's

> physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian . . . to exercise a minimum degree of care . . . (b) in providing the child with proper supervision or guardianship . . . or by any other acts of a similarly serious nature requiring the aid of the court . . . .

The Division must prove abuse or neglect by a preponderance of the evidence. N.J.S.A. 9:6-8.46(b); N.J. Div. of Youth & Family Servs. v. N.S., 412 N.J. Super. 593, 615 (App. Div. 2010).

In G.S. v. Department of Human Services, 157 N.J. 161, 176 (1999), the Court reviewed the meaning of the quoted statutory language and held it did not require that the parent intended to harm the child. "[T]he phrase 'minimum degree of care' refers to conduct that is grossly or wantonly negligent, but not necessarily intentional." Id. at 178. Conduct that can be described as ordinary negligence is not sufficient to prove abuse or neglect of a child within the meaning of the statute. Dep't of Children & Families, Div. of Youth & Family Servs. v. T.B., 207 N.J. 294, 306-07 (2011).

Defendant contends the boyfriend's cursing and derogatory comments about the child were not sufficient to have alerted her to the danger of physical harm such that she can be found to have acted grossly negligently in leaving the child with him while she worked.  She adds that she had regularly taken appropriate steps to assure the child's health and well-being, including prenatal care and regular doctors' appointments.  She emphasizes that, until December 9, 2012, even the doctors that saw the child did not detect he had suffered injuries.

A parent "fails to exercise a minimum degree of care when he or she is aware of the dangers inherent in a situation and fails adequately to supervise the child or recklessly creates a risk of serious injury to that child."  G.S., supra, 157 N.J. at 181.  As we stated, the Division is not required to prove defendant intentionally abused or neglected the child.  It is sufficient to show that defendant was grossly negligent in preventing or eliminating the risk of harm to the child.  Id. at 176, 178.

Negligence falls on a continuum of conduct from ordinary to gross based on the level of risk created, and it is determined on a case-by-case basis.  T.B., supra, 207 N.J. at 309.  In New Jersey Division of Youth & Family Services v. A.R., 419 N.J. Super. 538 (App. Div. 2011), we applied the following

formulation of gross negligence: "Where an ordinary reasonable person would understand that a situation poses dangerous risks and acts without regard for the potentially serious consequences, the law holds him responsible for the injuries he causes."  Id. at 544 (quoting G.S., supra, 157 N.J. at 179).

In this case, defendant's knowledge of the boyfriend's impatience and lack of attention to the child's safety, other negative character traits of the boyfriend, and the actual prior injury to the child made it grossly negligent for defendant to leave the child alone with him.  Defendant had met and begun a relationship with the boyfriend just a few months earlier.  She did not know enough about his reliability and responsibility such that she could leave the infant in his care for hours at a time.  In fact, the boyfriend had shown in at least three ways that he was not a safe person to whom the seven-month-old infant could be entrusted.  He had a criminal record, he cursed at the child and made comments indicating he was impatient when the child cried or whined, and he left the infant alone in a bathtub such that the child fell and struck his head.

In addition, the child was "not himself" for several days before December 9, 2012, crying and whining and not sleeping at night.  Defendant should have detected a problem that made it particularly risky to leave the child alone with the boyfriend

A-4394-13T3

on that day. Failing to protect a child against risk of harm by another can constitute neglect of the child. See F.M., supra, 211 N.J. at 450; N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 289 (2007); see also N.J. Div. of Youth & Family Servs. v. S.V., 362 N.J. Super. 76, 80 (App. Div. 2003) (termination of parental rights affirmed where one aspect of the defendant-mother's unfitness was her failure to keep her children protected against physical and sexual abuse by her boyfriend).

Defendant's delay in seeking medical attention may not have been sufficient to warrant a finding of gross negligence if viewed in isolation. She attempted to warm the child herself, then returned to her job to report to her manager, and finally called a taxi instead of an ambulance. These mistakes might not rise to the level of gross negligence. But in conjunction with the precipitating act of leaving the child in the boyfriend's care, they were evidence of grossly inadequate attention to the child's safety and health. While not purposeful conduct, defendant's actions on the day that she found the child blue, shivering, and cold added to the demonstration of gross negligence in the care of a helpless, severely ill infant.

We conclude the proofs were sufficient for the Family Part to find by a preponderance of the evidence that defendant

A-4394-13T3

neglected her child by placing him in the care of an untrustworthy and impatient man about whom she knew very little, and by delaying the emergency medical aid that the child needed.

### III.

Despite her mistakes, defendant proved after the incident that she was capable of being a good parent. She complied with the counseling and services that the Division arranged for her, and the child was returned to her custody in August 2013. Her naïve trust in the responsibility of another person for the well-being of an infant made her a neglectful parent. Her learning from the experience and removing the boyfriend from her and the child's lives showed a likelihood that she is capable of providing the care and nurture the child needs.

The finding of neglect will now permanently stain the reputation of this remorseful and rehabilitated mother. She will be considered unfit for certain types of employment, volunteer work, or personal relationships that involve children.

A finding of abuse or neglect under the statute requires the inclusion of the person's name in the Central Registry maintained by the New Jersey Department of Children and Families of those found to have abused or neglected a child. Pursuant to N.J.S.A. 9:6-8.11, reports of child abuse or neglect must be forwarded to the child abuse registry operated by the Division,

A-4394-13T3

which "shall be the repository of all information regarding child abuse or neglect that is accessible to the public pursuant to State and federal law."

Such reports are confidential except as provided by statute. N.J.S.A. 9:6-8.10a. The statute contains a lengthy list of institutions, governmental entities, and persons to whom the Division may release information contained in the registry. N.J.S.A. 9:6-8.10a(b)-(g). In addition, the Department of Children and Families must check the registry before granting approval for the employment, volunteer services, and household relationships of certain caregivers for children and others. N.J.S.A. 9:6-8.10c, -8.10e; N.J.S.A. 30:5B-25.3.

Inclusion of defendant's name in the registry will not only prevent her from participation in a field that involves children but is also likely to disqualify her from such potential developments in her life as designation by a court or by the Division as a caregiver for a child that is related to her. See generally W. Todd Miller, The Central Registry Statute for Abuse and Neglect Matters Is Constitutionally Flawed, 8 Rutgers J.L. & Pub. Pol'y 651, 654-56 (2011). Thus, for example, a person such as defendant who was found to have neglected her child at the age of twenty, or any parent whose momentary loss of patience resulted in an isolated incident of excessive punishment or

neglect, may be precluded twenty-five or thirty years later from serving as the caretaker or guardian of her own grandchild, even if she demonstrates during those years that she is a caring and attentive parent and never again could be accused of having abused or neglected a child.  See id. at 652-56.

The registry is a sensible measure for protecting children against harm, but one might reasonably question whether its disqualifications should last a lifetime in every case where abuse or neglect is found.  Nothing in the statutes provides for expungement of substantiated reports of child abuse or neglect, or removal of a person's name from the registry at an appropriate time despite rehabilitation and years of good conduct.  This absence of an expungement or removal remedy contrasts sharply with our Criminal Code of Justice, which provides for expungement of many types of criminal and lesser offenses, N.J.S.A. 2C:52-1 to -32, and even with registration of sex offenders under Megan's Law, N.J.S.A. 2C:7-1 to -23, which contains a provision for an offender to apply after fifteen years of good behavior for relief from the obligations of the registration law, N.J.S.A. 2C:7-2(f).  Considering the youth of this defendant and her motivation to correct her mistakes and prevent future harm to her child, a lifetime of "enormous implications upon careers or reputations" may be a harsh and

unjust punishment. Miller, supra, 8 Rutgers J.L. & Pub. Pol'y at 652.

Nevertheless, the trial court did not err in finding that defendant's past mistakes amounted to neglect of the child as defined in N.J.S.A. 9:6-8.21(c)(4)(b). We reach that conclusion on the record presented and pursuant to our standard of review from the trial court's decision. We also seek to draw the attention of the other branches of our government and any other interested parties to the seeming disparity of the registration law under the abuse or neglect statutes. Unlike other such laws, the Central Registry provides no opportunity for the rehabilitated and reformed individual ever to clear her name and reputation, regardless of the degree of abuse or neglect in a particular case and regardless of future unblemished conduct and character.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4394-13T3