**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4179-17T2

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

          v.

B.H.,

      Defendant-Appellant,

and

H.S. and T.S.,[1]

      Defendants.

_____

IN THE MATTER OF M.S.,

      a Minor.

_____

<table><tr><td>APPROVED FOR PUBLICATION<br><br>June 25, 2019<br><br>APPELLATE DIVISION</td></tr></table>

Submitted May 15, 2019 – Decided June 25, 2019

Before Judges Koblitz, Currier and Mayer.

---

[1] The minor's biological father, defendant T.S., did not participate in this appeal.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FN-13-0236-17.

Joseph E. Krakora, Public Defender, attorney for appellant (Dianne Glenn, Designated Counsel, on the briefs).

Gurbir S. Grewal, attorney for respondent (Jason Wade Rockwell, Assistant Attorney General, of counsel; Salima E. Burke, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Melissa R. Vance, Assistant Deputy Public Defender, of counsel and on the brief).

The opinion of the court was delivered by

MAYER, J.A.D.

Defendant B.H. (Ben)[2] appeals from a January 24, 2018 order finding he abused or neglected M.S. (Mariah), the five-year-old daughter of his girlfriend at the time, H.S. (Hannah). Because Ben was not Mariah's parent or guardian, the family court lacked jurisdiction to proceed under Title 9. Thus, we reverse the abuse or neglect finding against Ben.

---

[2] We use initials and pseudonyms to protect the parties' privacy interests. R. 1:38-3(e).

The facts are not disputed. Ben and Hannah began dating in July 2015.[3] Ben first met Mariah about nine months after he began dating Hannah. When they were dating, Ben visited Hannah twice a week, dined with her and Mariah, and "stay[ed] the night occasionally." Mariah referred to her mother's boyfriend as "Mr. [Ben]," rather than "dad" or another familial term.

In March 2017, Hannah asked Ben to watch Mariah for a few hours. This was the first time Hannah ever asked Ben to look after Mariah. Ben took Mariah to his mother's house, where Ben and his mother had dinner with the child while Hannah worked.

On April 19, 2017, Mariah developed a fever while at daycare. The daycare center asked Hannah to pick up her daughter. Because Hannah did not have a car, she asked Ben to drive her to daycare. Hannah retrieved Mariah from daycare and put her in a car seat in the rear of Ben's car on the passenger side. Hannah believed she properly secured the car seat.

After leaving daycare, Ben got into a single-car accident. Because no other vehicles were involved, neither Ben nor Hannah reported the accident. The rear passenger window was shattered and the car sustained visible damage

---

[3] The parties dated for a total of eighteen months with a hiatus of approximately three or four months during that time.

A-4179-17T2

as a result of the accident. Hannah did not see any glass from the broken window on Mariah or in her car seat.

After the accident, with Mariah still in the car seat, Ben drove Hannah to her friend's house in Manahawkin. Hannah asked Ben to take Mariah to a nearby fast-food restaurant for a snack while Hannah went into the house to ask her friend for money. The restaurant was located about a mile away. This was the only time Ben was ever alone with Mariah.

Ben drove Mariah to the restaurant. The Stafford Township Police Department received a report of a male under the influence in the parking lot of the fast-food restaurant with a child in the rear seat. Upon arrival, the police officers saw Ben's car improperly parked. The officers noticed substantial damage to the car's passenger side and a shattered rear passenger window.

The officers also saw Ben "slumped over the steering wheel" in his car. They observed that Mariah, who was in her car seat, did not "seem upset or scared[.]" When the officers approached the car, Ben "slowly lifted up his head" and the officers asked Ben to step out of the car. Ben complied, but was "very slow and sluggish . . . ." According to the officers, Ben was "slowly swaying back and forth, his knees were slightly sagging, . . . his speech was slow," and "his eyelids were droopy and he had bloodshot eyes."

4

The second officer checked on Mariah while the first officer questioned Ben. The second officer noticed a "white pill in plain view on the driver side floorboard." The pill found in Ben's car was determined to be an "oxycodone/oxycodone derivative."

After Hannah spent about thirty to forty-five minutes at her friend's house, she became worried because Ben and Mariah had not returned. Hannah then walked approximately fifteen minutes to the restaurant to check on them.

After Hannah arrived at the restaurant, the officers removed Mariah from her car seat. In the process of removing Mariah from Ben's car, the police found the car seat was not properly secured and was "filled with glass particles."

The officers arrested Ben, searched him, and found four additional white pills in his pocket. At the police station, Ben was unable to complete several field sobriety tests. Ben admitted to the police he took two Percocet pills the morning of the incident as well as his prescribed antidepressant and anxiety disorder medications.

The police reported the incident to the New Jersey Division of Child Protection and Permanency (Division). In the Division's investigative summary, the caseworker noted, "[m]om's boyfriend is [Ben] and he has his own residence in Toms River . . . ." The caseworker learned Hannah had been dating Ben for

less than two years prior to April 19, 2017. She also interviewed Mariah, who explained her mother had a boyfriend. Mariah told the caseworker she liked spending time with her mother's boyfriend. Ben was interviewed by the caseworker as well. However, Ben was unable to "remember much about the accident" because he took "benzo[]s" and a "generic for Clozapine" but did not have a prescription for those medications.

The Division determined Ben "was in a caretaker role of [Mariah] when he was found nodding off in a [fast-food] parking lot on April 19, 2017," and he "was under the influence of Benzos and [Clozapine] which were not prescribed to him." As a result, the Division substantiated a finding of abuse or neglect against Ben.

The Division then petitioned the family court for custody, care, and supervision of Mariah, which was granted on June 8, 2017. In the Division's complaint, Ben was named an "interested party."

In September 2017, Ben filed a motion to dismiss the Division's complaint for failure to state a cause of action. In his motion, Ben argued under N.J.S.A. 9:6-8.21 or N.J.S.A. 9:6-2 that he did not meet the definition of parent or guardian. He asked the judge to conduct a preliminary hearing to decide whether he was a parent or guardian subject to Title 9, but the judge declined.

6

In October 2017, the judge held a fact-finding hearing to determine whether Ben abused or neglected Mariah. Hannah previously stipulated her actions constituted child abuse or neglect.

During the hearing, Hannah described Ben as her "lover" and "best guy." She also testified that her relationship with Ben was "completely separate" from Mariah, and her daughter had "no relationship" with Ben. Hannah denied Mariah was "together with [Ben] on a regular basis."

Upon completion of the testimony, the judge rendered an oral decision, finding Ben was Mariah's guardian and thus properly charged with abuse or neglect of the child. The judge stated:

> there is no question that at the time the incident occurred . . . from the moment that [Ben] dropped off [Hannah] there was absolutely nobody else in control of this child.
>
> . . . .
>
> [W]hen we talk about assuming responsibility – and again, I think nobody can dispute that he assumed the responsibility when he let [Hannah] out of the vehicle and agreed to go get – go to take the – he didn't even sit curbside, he went somewhere.
>
> . . . .
>
> [Ben] did assume responsibility even then. So I do think that the Division has enough of a chain of events for enough of a course of conduct for a period of time,

on that day . . . . I cannot ignore that he took on that responsibility. He assumed responsibility and therefore is subject to the law as it stands.

The judge found Ben "abused or neglected" Mariah because he placed her at a "risk of harm by driving with [her] in his car while under the influence of narcotics and impaired."

On appeal, Ben argues he was not Mariah's parent or guardian and therefore the judge erred in finding he abused or neglected Mariah in accordance with Title 9.

We will uphold a trial judge's fact-findings if they are "supported by adequate, substantial, and credible evidence." N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 552 (2014). We "accord deference to fact[-]findings of the family court because it has the superior ability to gauge the credibility of the witnesses who testify before it and because it possesses special expertise in matters related to the family." N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448 (2012).

"Where the issue to be decided is an 'alleged error in the trial judge's evaluation of the underlying facts and the implications to be drawn therefrom,'" we expand our scope of review. N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007) (quoting In re Guardianship of J.T., 269 N.J. Super.

8

172, 188-89 (App. Div. 1993)). No deference is given to the court's legal conclusions which are reviewed de novo. N.J. Div. of Child Prot. & Permanency v. K.G., 445 N.J. Super. 324, 342 (App. Div. 2016).

"To prevail in a Title 9 proceeding, the Division must show by a preponderance of the competent and material evidence that the defendant abused or neglected the affected child." N.J. Div. of Child Prot. & Permanency v. B.O., 438 N.J. Super. 373, 380 (App. Div. 2014). An "abused or neglected child" means a child under the age of eighteen years

> whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his [or her] parent or guardian, as herein defined, to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof . . . .
>
> [N.J.S.A. 9:6-8.21(c)(4)(b) (emphasis added).]

The question presented in this appeal is whether Ben was Mariah's guardian at the time of these events.

The term "guardian" is broadly defined. See N.J. Div. of Youth & Family Servs. v. G.M., 198 N.J. 382, 397 (2009). Pursuant to N.J.S.A. 9:6-8.21(a), a parent or guardian includes: "any natural parent, adoptive parent, resource family parent, stepparent, paramour of a parent, or any person, who has assumed

responsibility for the care, custody, or control of a child or upon whom there is a legal duty for such care." According to N.J.S.A. 9:6-2, a parent or guardian is a "person having the care, custody and control of any child," "any person who has assumed the care of a child, or any person with whom a child is living at the time the offense is committed . . . ."

No published cases address whether babysitting one time and agreeing to drive a child a short distance at a parent's request falls within the definition of guardian under Title 9. In a limited number of cases courts have addressed whether an individual satisfies the definition of guardian for purposes of Title 9. However, the facts in those cases differ significantly from the circumstances here.

In New Jersey Division of Child Protection & Permanency v. J.L.G., 450 N.J. Super. 113, 120-23 (App. Div. 2015), aff'd o.b., 229 N.J. 113 (2017), we held the boyfriend of the child's biological mother was the child's guardian pursuant to Title 9. In that case, the defendant boyfriend lived in the home with the biological mother and the child, he supported the mother and the child, and the child referred to the defendant as "dad." Id. at 120. Based on those facts, we affirmed the trial court's finding that the defendant was the child's guardian

because he "assumed responsibility for [the child's] care" in accordance with N.J.S.A. 9:6-8.21(a).  Ibid.

In G.S. v. New Jersey Department of Human Services, 157 N.J. 161, 166-67 (1999), the defendant, who was the weekend coordinator for the Association for Retarded Citizens (ARC), administered an overdose of medication to an autistic, developmentally-disabled child in her care.  The defendant did not dispute that she was an "employee[] or volunteer . . . of an institution . . . responsible for the child's welfare" and therefore a guardian in accordance with N.J.S.A. 9:6-8.21(a).  Id. at 171.

In New Jersey Division of Child Protection & Permanency v. K.N.S., 441 N.J. Super. 392, 394 (App. Div. 2015), we considered "whether [the] defendant-mother neglected [a] child by allowing the boyfriend to be [the seven-month-old child's] babysitter for several hours while [the defendant-mother] worked." However, we did not review whether the boyfriend, who babysat the child for three consecutive weeks, was the child's guardian under Title 9.

In the related context of criminal child endangerment, N.J.S.A. 2C:24-4(a), our Supreme Court, interpreting language similar to the language in Title 9, found the crime of child endangerment applied "to those who have assumed a general and ongoing responsibility for the care of the child."  State v.

Galloway, 133 N.J. 631, 661 (1993). The "general and ongoing responsibility" need not be based on a "legal and formal" relationship with the child, and instead "may arise from informal arrangements." Ibid. "It may be based on a parental relationship, legal custody, or on less-structured relations; or it may arise from cohabitation with the child's parent." Ibid. However, the requirements for a guardian are not met when a person only assumes "temporary, brief, or occasional caretaking functions, such as irregular or infrequent babysitting . . . ." Id. at 661-62.

Applying the guidance offered in these cases, the undisputed testimony here was that Ben was Hannah's boyfriend. However, he did not provide financial support for Hannah or Mariah. Ben never lived in the same house with Hannah and Mariah. Nor did Mariah describe Ben using any parental terms. Ben did not consider Mariah to be his child or step-child. He testified that he was not a daily presence in Mariah's life and Hannah corroborated that testimony.

There was no testimony or evidence presented during the fact-finding hearing to contradict Ben's assertions that he did not assume a general and ongoing responsibility for regular supervision or care of Mariah. Prior to April 19, 2017, Ben had never been alone with Mariah. At most, Ben supervised

12

Mariah on two limited occasions. On the first occasion, Ben babysat for Mariah, along with his mother, for a few hours in March 2017. On the second occasion, approximately one month later, Ben drove the child to a nearby fast-food restaurant at Hannah's request, and remained in his car with Mariah for approximately thirty minutes until Hannah arrived. Under these circumstances, Ben assumed only "temporary, brief, or occasional caretaking functions" for Mariah. Galloway, 133 N.J. at 661.

Having reviewed the unrefuted testimony regarding the extent and nature of the relationship between Ben and Mariah, we are satisfied that Ben is not Mariah's guardian because his relationship with the child did not trigger the requisite duty of care. Title 9 was not meant to apply to a person who assumes brief or temporary supervision or care of a child. An individual cannot abuse or neglect a child with whom he or she has no ongoing responsibility or obligation to provide regular care or supervision. Watching a child for an hour or agreeing to drive a child a short distance at the request of a friend or neighbor, while assuming limited responsibility, does not impose a general and continuing obligation between the adult and the child consistent with Title 9.

Because Ben failed to qualify as a guardian in accordance with N.J.S.A. 9:6-8.21 or N.J.S.A. 9:6-2, the court lacked jurisdiction under Title 9 to find that Ben abused or neglected Mariah.

Reversed and remanded to remove defendant's name from the Division's Central Registry. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4179-17T2