# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0274-19T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

M.D.,

      Defendant-Appellant,

and

H.E.,

      Defendant.

_____

IN THE MATTER OF D.E.,
a minor.

_____

Submitted September 29, 2020 – Decided November 18, 2020

Before Judges Messano and Suter.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FN-07-0457-17.

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; Caitlin A. McLaughlin, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Carlos J. Martinez, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Nancy P. Fratz, Assistant Deputy Public Defender, on the brief).

PER CURIAM

M.D. (defendant) appeals from an order of the Family Part finding that she abused and neglected her minor son D.E. (Devin)[1] by not administering him prescribed medications and by not providing him with educational instruction. We affirm.

I.

Defendant and H.E. (Harold) are the parents of Devin, who was born in 2007. Devin resided with defendant.

---

[1] We use initials and pseudonyms to maintain the confidentiality of the parties and their child. R. 1:38-3(d)(12).

A-0274-19T1

In April 2017, the Division of Child Protection and Permanency (the Division) filed a verified complaint and order to show cause seeking the care and supervision of Devin based on allegations he was medically and educationally neglected, and that defendant was mentally ill. On the return date in May 2017, the trial court transferred Devin's custody to Harold. The Division amended the complaint to add a request for custody. In the interim, the Division substantiated defendant for educational and medical neglect and mental illness.

A fact-finding hearing was conducted based on the allegations in the amended abuse and neglect complaint. We glean the facts from that hearing.

When Devin was in first grade, defendant disagreed with the school's decision to classify him as emotionally disturbed. She rescinded the classification, following what she claimed was harassment of Devin by the school. Devin was placed in a regular classroom, but within just a few days he had a "melt down," resulting in his suspension from school. The Division became involved based on a referral that Devin had not returned to school. In April 2014, the Division closed its investigation as unfounded because Devin was being home-schooled by defendant.

In March 2017, the Division received a referral about Devin by medical personnel. The referral alleged Devin had not attended school for two years and

he was not being homeschooled. The referent alleged that the child's mother reported Devin was "very sick" but that her conversation was "rambling." Defendant was supposed to take Devin to a psychiatrist —as his pediatrician advised— but defendant had not done so. The referent expressed concern that Devin's medical needs were not being met by defendant.

The Division investigated the referral. The investigator learned from her interview with Devin that he was not taking any medications. He told her he was home-schooling everyday with his mother.

When the investigator spoke with defendant, she said that after Devin was declassified, he was not treated well at school, and she began home-schooling him. Although she originally conducted four hours of home school instruction per day, she reduced that to two hours per day because her "work schedule conflicted in the time she has allotted . . . and . . . because the home environment was so hectic that she just . . . couldn't keep up . . . ." She acknowledged that "recently" she stopped home-schooling all together because of Devin's health issues. The investigator testified that defendant acknowledged Devin was not performing at grade level and had fallen behind.

Harold told the investigator that initially defendant was doing well at home-schooling, but that for the past year, Devin was not doing much work. He

suggested to defendant that Devin could attend a school near him, but she would not agree to this.

The investigator asked defendant about the allegations that Devin's medical needs were not being met. Defendant told the investigator that in February 2017, Devin complained about coughing, throat pain and fever. She took him to the pediatrician who prescribed Amoxicillin, an antibiotic. Defendant discontinued administration of that medicine, claiming it was out of date.

Defendant advised the investigator that Devin remained ill. Defendant took Devin to the emergency room, twice, but the doctors there could not determine what was wrong with Devin. Devin "ended-up" with the flu—according to defendant—but she would not administer the Tamiflu that was prescribed for him, because she could not afford the liquid form of the medication and Devin would not take the pills. Defendant gave him Motrin. She refused the recommended flu shot for him because he still had fevers. Defendant took Devin to another doctor, who prescribed a "Z-pack" and Orapred, but she claimed Devin developed a fever of 105 degrees and stopped breathing. He was taken to the hospital. She was advised to have Devin finish the prescribed medication because not continuing the medication was worse for

5

the child, but she did not do so. She took Devin to an ear, nose and throat specialist, but Devin would not submit to an endoscopy.

Defendant told the investigator that Devin was still suffering from fevers when the interview occurred on April 7, 2017. Defendant also explained to the investigator that she would not take Devin for a consultation with a psychologist because the pediatrician who made the referral did not explain "thoroughly enough" why it was needed.[2]

The trial court found that defendant abused and neglected Devin by not providing him with an education. This finding was based on defendant's statements to the investigator that Devin had fallen behind educationally and was not at grade level. Defendant admitted to the investigator that she had reduced the number of hours of instruction and then stopped all together because of Devin's medical problems. The trial court found the investigator's testimony was credible.

---

[2] In May 2017, Dr. Leah Schild conducted a psychological evaluation of Devin to "assess for symptoms related to trauma, regarding concerns of . . . educational neglect, and medical neglect" and to make recommendations for services. Although Dr. Schild testified at the hearing, the trial court concluded not to consider her testimony, but without an explanation. We have not related her findings or recommendations because they were not part of the trial court's reasoning.

A-0274-19T1

The trial court also found that defendant abused and neglected Devin by not providing him with adequate medical care. Defendant failed to follow through on the medical recommendations made by the doctors from February through April 2017. Based on what defendant told the investigator, the court found that Devin "was sick, was still experiencing symptoms from at least February 13 to April 7. That is two months of unnecessary sickness." The court found that defendant's "actions created an imminent danger or a substantial risk of harm to" Devin and constituted abuse and neglect under N.J.S.A. 9:6–8.21(c)(4). The court did not find the Division met its burden of proving abuse and neglect based on defendant's mental health because "there was no evidence of a diagnosis of a mental illness . . . ."

On August 6, 2019, the abuse and neglect litigation was terminated after sole legal and physical custody of Devin was transferred to his maternal grandmother based on defendant's non-compliance with the Division's services. The trial court's order continued defendant's supervised visitation with Devin.

On appeal defendant raised this issue:

> Point I
>
> THE TRIAL COURT'S FINDING OF ABUSE AND NEGLECT AGAINST [DEFENDANT] IS NOT SUPPORTED BY A PREPONDERENCE OF THE EVIDENCE AND SHOULD BE REVERSED AND

THE REQUIREMENT IN THE FINAL ORDER REQUIRING THAT [DEFENDANT] BE SUPERVISED WITH HER SON SHOULD BE VACATED.

A.    The Trial Court Improperly Concluded that [Defendant] had Educationally Neglected Her Son When Home-Schooling Him.

B.    The Trial Court Improperly Determined that [Defendant] had Medically Neglected Her Son.

## II.

We defer to Family Part judges' fact-finding because of their "special jurisdiction and expertise in family matters." Cesare v. Cesare, 154 N.J. 394, 413 (1998). They also have "the opportunity to make first-hand credibility judgments about the witnesses who appear on the stand; [and have] a feel of the case that can never be realized by a review of the cold record." N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 342-43 (2010) (quoting N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008)). Fact-finding that is supported by sufficient, substantial and credible evidence in the record is upheld. See N.J. Div. of Youth & Family Servs. v. L.L., 201 N.J. 210, 226 (2010). The court's interpretation of the law or its legal conclusions are reviewed de novo. See State ex rel. A.B., 219 N.J. 542, 554-55 (2014).

A-0274-19T1

The relevant portion of Title Nine, N.J.S.A. 9:6–8.21(c)(4), defines an "[a]bused or neglected child" to include a child under the age of eighteen,

> whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian . . . to exercise a minimum degree of care (a) in supplying the child with adequate food, clothing, shelter, education, medical or surgical care though financially able to do so or though offered financial or other reasonable means to do so, or (b) in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof . . . .
>
> [N.J.S.A. 9:6-8.21(c)(4).]

Each case of alleged abuse "requires careful, individual scrutiny" and is "generally fact sensitive." N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 33 (2011). The "main focus" of Title Nine "is not the 'culpability of parental conduct' but rather 'the protection of children.'" Dep't of Children & Families, Div. of Child Prot. & Permanency v. E.D.-O., 223 N.J. 166, 178 (2015) (quoting G.S. v. Dep't of Human Servs., 157 N.J. 161, 177 (1999)).

The phrase "minimum degree of care" under the statute "refers to conduct that is grossly or wantonly negligent, but not necessarily intentional." G.S., 157 N.J. at 178. "[A] guardian fails to exercise a minimum degree of care when he or she is aware of the dangers inherent in a situation and fails adequately to

A-0274-19T1

supervise the child or recklessly creates a risk of serious injury to that child." Id. at 181.  A finding of gross negligence depends on the totality of the circumstances, N.J. Div. of Youth & Family Servs. v. V.T., 423 N.J. Super. 320, 329 (App. Div. 2011), and "is determined on a case-by-case basis."  N.J. Div. of Child Prot. & Permanency v. K.N.S., 441 N.J. Super. 392, 398 (App. Div. 2015).

It is well established that parents have a duty "to ensure their children attend public school or receive equivalent instruction to that provided in the public schools."  N.J. Div. of Child Prot. & Permanency v. S.D., 453 N.J. Super. 511, 519 (App. Div. 2018).  This is required by law.  See N.J.S.A. 18A:38-25 (providing that "[e]very parent, . . . having custody and control of a child between the ages of six and [sixteen] years shall cause such child regularly to attend the public schools . . . or to receive equivalent instruction elsewhere than at school").  The failure to do so may be deemed grossly negligent and constitute educational neglect under Title Nine.  S.D., 453 N.J. Super. at 519 (citing N.J. Div. of Youth & Family Servs. v. M.W., 398 N.J. Super. 266, 285-86 (App. Div. 2008)).

A burden-shifting framework applies.  Under State v. Vaughn, the State must first allege a violation of N.J.S.A. 18A:38-25, which then shifts the burden of production to the defendant to provide evidence "that a child attends a day

10

school in which the equivalent instruction is given, or that the child is receiving equivalent instruction elsewhere than at school."  44 N.J. 142, 147 (1965). Where that burden is met, the "burden of persuasion remains with the State . . . ." Ibid.

Here, defendant home-schooled Devin between 2014 and the Division's investigation in April 2017.  Defendant acknowledged reducing his instruction from four hours a day to two and then to none.  She acknowledged he had fallen behind educationally.  This satisfied the Division's burden that there was a violation of N.J.S.A. 18A:38-25.

Under Vaughn, the burden of production shifted to defendant.  Although Devin said defendant taught him math and reading "every day," this was not consistent with defendant's statements to the investigator.  Defendant also did not show what she had done to provide an education for Devin.  She never provided any curriculum or other evidence of her home-schooling plan.  She never showed how she evaluated Devin's progress against standards for children his age and abilities.  She did not allege he had a learning disability that might have affect his education, which she acknowledged to the Division was lacking. Harold told the investigator that defendant gave Devin less work over the previous year.  We are satisfied there was substantial credible evidence of

A-0274-19T1

educational abuse and neglect under N.J.S.A. 9:8-21 because defendant failed to exercise the minimum degree of care for Devin by not supplying him with "equivalent [educational] instruction."

Defendant argues the trial court erred by determining she medically neglected Devin. She alleges the Division did not show that Devin had a serious medical condition that could have led to long-term harm if left untreated.

An abused or neglected child includes one whose physical condition "has been impaired or is in imminent danger of becoming impaired" by a parent who does not provide adequate medical care. N.J.S.A. 9:6-8.21(c)(4)(a). There is no requirement for the courts to wait for a child to be irreparably harmed by parental neglect to take protective action. In re Guardianship of D.M.H., 161 N.J. 365, 383 (1999). "[A] finding of abuse and neglect can be based on proof of imminent danger and a substantial risk of harm." E.D.-O., 223 N.J. at 178 (2015) (quoting N.J. Div. of Youth & Family Servs. v. A.L., 213 N.J. 1, 23 (2013)). "In many [abuse or neglect] cases, an adequate presentation of actual harm or imminent danger can be made without the use of experts." A.L., 213 N.J. at 29.

The trial court found defendant's "actions created an imminent danger or a substantial risk of harm to" Devin. We agree. There was substantial, credible

A-0274-19T1

evidence of this in the record. Defendant repeatedly ignored medical advice, by seeking treatment and then discontinuing prescribed medications on many occasions. Defendant knew the child was ill. His temperature soared to 105 degrees and, according to defendant he stopped breathing at one point. She told the Division's investigator that she was warned not to discontinue medication and yet she did. We agree these actions—occurring within the short span of two months—supported the finding that defendant created a substantial risk of harm to Devin.

This case is not like P.W.R., cited by defendant, where the trial court's finding of medical neglect was reversed. 205 N.J. at 21-22. In PWR, there was no proof of a physical condition where care should have been sought. In this case, defendant acknowledged Devin was ill. Given the substantial risk of harm to Devin, we are satisfied the finding of medical neglect under N.J.S.A. 9:8-21 was adequately supported.

Defendant argues in her reply brief that the trial court's order restricting her to supervised visitation with Devin should be vacated. The order terminating this litigation transferred Devin's custody to his maternal grandmother. Defendant resides in the same residence. In her initial brief, defendant asked that the order requiring supervised visitation be vacated, but never addressed

that issue in her brief. Where an issue is not addressed on the merits, we consider it to be waived. Gormley v. Wood-El, 218 N.J. 72, 95 n.8 (2014); Drinker Biddle v. N.J. Dep't of Law & Pub. Safety, Div. of Law, 421 N.J. Super. 489, 496 n.5 (App. Div. 2011) (noting that claims not addressed in merits brief are deemed abandoned). See Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2020). Furthermore, defendant's reply brief does not even address her non-compliance with the Division's services, or the conditions set forth in the termination order that defendant must satisfy in order to be considered for unsupervised contact with Devin.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0274-19T1