# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-2654-22
      A-2655-22

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

  Plaintiff-Respondent,

v.

I.F. and L.S.-P.,

  Defendants-Appellants,

and

K.L. and W.A.,

  Defendants.

_____

IN THE MATTER OF G.L. and
A.A., minors.

_____

    Submitted September 24, 2024 – Decided October 24, 2024

    Before Judges Gilson and Augostini.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Gloucester County, Docket No. FN-08-0063-22.

Jennifer N. Sellitti, Public Defender, attorney for appellant I.F. (David A. Gies, Designated Counsel, on the briefs).

Jennifer N. Sellitti, Public Defender, attorney for appellant L.S.-P. (Arthur David Malkin, Designated Counsel, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent (Janet Cohen, Assistant Attorney General, of counsel; Lisa J. Rusciano, Deputy Attorney General, on the brief).

Jennifer N. Sellitti, Public Defender, Law Guardian, attorney for minors (Meredith Alexis Pollock, Deputy Public Defender; Julie E. Goldstein, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

In these consolidated matters, I.F. (Ingrid) and L.S.-P. (Leon) appeal from an October 21, 2022 order finding that they had abused and neglected Ingrid's teenage daughter, G.L. (Gina).[1] Following an evidentiary hearing, the family court found that Leon had sexually abused Gina by inappropriately touching her on at least two occasions. The court also found that Ingrid had neglected Gina

---

[1] To protect privacy interests and the confidentiality of the record, we use initials and fictitious names. R. 1:38-3(d)(12).

by allowing Leon to be with Gina after Ingrid was aware that Leon had sexually abused Gina while there was a restraining order in place prohibiting Leon from having contact with Gina. Because the family court's findings of facts are supported by substantial credible evidence and because its legal conclusions are consistent with well-established law, we affirm.

I.

Ingrid is the biological mother of two daughters: Gina, born in December 2005, and A.A. (Aimee), born in May 2010. Leon is married to Ingrid and is the stepfather of both the daughters. K.L. is the biological father of Gina and W.A. is the biological father of Aimee. W.A. is also the brother of Leon. Neither of the biological fathers were found to have abused or neglected either child and they are not involved in these appeals.

The allegations that Leon had sexually abused Gina came to light in 2021. On May 6, 2021, the Division of Child Protection and Permanency (the Division) received a report that Gina had disclosed that Leon had sexually abused her. The following day, a Division case worker, Jennifer Djakow, met with and interviewed Gina, Aimee, and Ingrid. Initially, Gina, Aimee, and Ingrid all denied experiencing or witnessing any sexual abuse. Instead, Ingrid informed Djakow that Leon was no longer living with the family and that she

3

had obtained a final restraining order (FRO) against Leon in December 2020. Shortly thereafter, the Division reported the allegations to the Gloucester County Prosecutor's Office.

On May 8, 2021, the Mantua Police Department contacted the Division concerning a domestic violence incident between Ingrid and Leon. According to the police, Gina and Aimee had witnessed an escalating fight between Ingrid and Leon and they had texted their maternal aunt, M.F. (Mary), who in turn called the police. Police officer Adam Hasselman responded to the home, where he found Ingrid, Leon, and the children. Ingrid and Leon denied that they had been arguing and instead told the officer that they had merely been talking loudly and yelling at each other. At the officer's suggestion, Ingrid allowed the children to leave with Mary. Leon was arrested for violating the December 2020 FRO.

On May 12, 2021, Djakow conducted a follow-up interview with Gina. Gina informed Djakow that she had previously not told the truth, and she reported that Leon had sexually assaulted her when she was between the ages of twelve and fifteen. Gina also informed Djakow that Leon was still living in the family home and that she did not feel safe.

Djakow called the police and later that day, Detective Colleen McClauslin interviewed Gina and Ingrid. Gina repeated to the detective that Leon had sexually abused her. Gina described various assaults, including a time when Leon took Gina into a room, pulled out his penis, and told her he would "put it in her." Gina also described another assault when Leon put liquid on his finger and touched her vagina. The detective then shared that information with Ingrid, who stated that it was "awkward for her to believe" the report, but she acknowledged that Gina was not a "liar."

In response to the report of sexual abuse by Leon, the Division implemented a safety protection plan with Ingrid. Under that plan, Leon was not to have any contact with the children. The Division also arranged for Gina and Aimee to be examined by a medical doctor.

Shortly thereafter, on May 20, 2022, Dr. Stephanie Lanese, M.D., of the New Jersey CARES Institute, interviewed and examined Gina and Aimee to determine if they needed treatment for sexual abuse.[2] Gina disclosed to Dr.

---

[2] The CARES Institute is one of four regional diagnostic and treatment centers for child abuse. See N.J.S.A. 9:6-8.99. The Institutes were established by the Commissioner of the Department of Children and Families in consultation with the New Jersey Task Force on child abuse and neglect to address the medical and mental health diagnostic and treatment needs of abused and neglected children. Ibid.

Lanese that Leon had sexually abused her. Gina did not want Dr. Lanese to physically examine her, but based on Gina's statements, Dr. Lanese found that Gina had been sexually abused by Leon and she recommended that Gina be referred for mental health services. Dr. Lanese did not find that Aimee had been abused.

In June 2021, the Division lifted the safety protection plan because Ingrid signed a family agreement, which prohibited Leon from having contact with the children. Approximately two months later, in September 2021, Ingrid and Leon were involved in another domestic violence incident, during which Leon allegedly attempted to strangle Ingrid. Gina witnessed that incident and, fearing for Ingrid's safety, threw a knife at Leon. Leon was not injured, but the police responded, and Ingrid obtained a new restraining order.

Thereafter, Leon was arrested and based on Gina's report, was charged with aggravated criminal sexual contact and endangering the welfare of a child. He was released pre-trial, and the criminal court issued a Sexual Offense Restraining Order (SOR Order), which prohibited Leon from having any contact with Gina or going to her home or school. The SOR Order also barred Leon from having contact with Aimee.

In November 2021, the Division received information that Leon was violating the SOR Order. Djakow investigated that report by interviewing Gina. Gina disclosed that Leon had been to the family's home on several occasions and that he had gone with Ingrid, Gina, and Aimee to a movie. Gina also reported that she felt "unsafe and uncomfortable" when Leon was around her.

Ingrid admitted that Leon had been over to the family home to fix a door but denied that Leon had spent the night or had gone to the movies with Ingrid and her daughters. In response, the Division initiated a new safety protection plan, requiring the children to stay with Mary and for Mary to supervise Ingrid's contact with the children.

In December 2021, the Division decided to seek care and supervision of Gina and Aimee. Accordingly, they sent a Spanish-speaking case worker to meet with Ingrid, whose primary language was Spanish. The Spanish-speaking case worker discussed and explained the court process to Ingrid. In providing that explanation, Ingrid was informed that the Division was concerned because she had allowed Leon to have contact with the children while the SOR Order was in place.

In January 2022, the Division filed a verified complaint under Title Nine and Title Thirty seeking care and supervision of Gina and Aimee. Thereafter,

7

the family court granted the Division's application for care and supervision, directing that the children were to remain in the physical custody of Mary, with Ingrid continuing to have legal custody and visits supervised by Mary. The court also restrained Leon from having any contact with the children.

Later that year, a fact-finding trial was conducted on October 6 and 7, 2022, to determine if Leon and Ingrid had abused or neglected Gina and Aimee. At the hearing, five witnesses testified: Gina, Djakow, Dr. Lanese, Officer Hasselman, and Detective McClauslin. Neither Ingrid nor Leon testified and neither of them called any witnesses.

Gina testified and explained how Leon had sexually assaulted her. In that regard, Gina explained that Leon had touched her thighs, massaged her shoulders, and touched her vagina under her clothes. She described that Leon had exposed his penis to her and that he had put his penis against her buttocks. She also stated that on another occasion, Leon had put a liquid on his fingers and touched her vagina.

Gina told the court that she had reported this sexual abuse to her mother, but she felt that Ingrid "didn't take it seriously." Gina also explained that after the SOR Order was put in place, Leon still came over to the family home and

8

saw her on several occasions.  In addition, Gina told the court that Leon had engaged in violent behavior with her and her mother.

Djakow testified concerning the Division's investigations and its findings. She detailed what Gina had reported to her concerning Leon's sexual abuse. Djakow also explained the Division's concerns regarding Ingrid allowing Leon to have contact with the children after the SOR Order had been issued.

Dr. Lanese was qualified as an expert in child abuse and neglect.  She testified concerning her interview and examination of Gina and Aimee.  She explained that while Gina did not want a physical examination, she believed that Gina had been sexually abused by Leon based on her expertise and Gina's consistent reporting of the abuse.  In that regard, Dr. Lanese recounted that Gina had described how Leon sexually abused her over a period of several years.  The abuse began with touching, progressed to massages, and included two specific instances.  In one instance, Leon had called Gina into his bedroom, pulled out his penis, and touched Gina's buttocks.  In another instance, Gina had reported to Dr. Lanese that Leon had put a clear liquid on his finger and then put his finger on Gina's vagina.

In her testimony, Dr. Lanese explained that the lack of a physical examination of Gina did not preclude her from making a diagnosis of sexual

9

abuse. Dr. Lanese then opined, to a reasonable degree of medical certainty, that Gina had been sexually abused.

Detective McClauslin described her investigation of Gina's reports of sexual abuse, including her interviews with Gina. The detective also described Gina's disclosures concerning Leon's physical abuse of both Gina and Ingrid, and Gina's fear of Leon.

Based on the evidence at the hearing, on October 21, 2022, the family court placed an oral decision on the record and issued an order finding that Leon and Ingrid had abused and neglected Gina.

The family court found that all the Division's witnesses had testified credibly. Concerning Leon, the court found that there was substantial and credible evidence that he had sexually assaulted Gina on at least several occasions. In making that finding, the court relied on the testimony of Gina, as well as the corroborative and consistent reports Gina had made to Djakow, Dr. Lanese, and Detective McClauslin.

Regarding Ingrid, the court found that she was aware of Gina's reports concerning Leon, that she was aware of the SOR Order, and that she understood that the Order prohibited Leon from having contact with Gina. Despite that knowledge, the court found that Ingrid had allowed Leon to have contact with

Gina and Aimee and thereby had put her daughters in potentially dangerous situations.

Several months after the October 21, 2022 fact-finding order had been issued, on March 22, 2023, the family court dismissed the protective services litigation. Shortly thereafter, Ingrid and Leon filed separate appeals from the October 21, 2022 order. We consolidated those appeals.

## II.

In his appeal, Leon contends that the finding of abuse was not supported by sufficient evidence because the Division did not prove that Gina suffered physical injuries or enduring psychological harm. He also alleges that he was denied due process because he could not testify at the hearing given that he had pending criminal charges.

In her appeal, Ingrid argues that the family court failed to make particularized findings concerning the risk she posed to Gina. In that regard, she asserts that her actions did not cause any harm to Gina. She also contends that she had not engaged in any grossly negligent conduct.

We are not persuaded by any of these arguments. There is substantial credible evidence that Leon sexually abused Gina. The evidence also establishes that after Ingrid was aware of Leon's abuse of Gina, and after Ingrid was aware

of the SOR Order prohibiting Leon from having any contact with Gina, Ingrid allowed Leon to have contact with Gina. Ingrid's actions therefore put Gina at substantial risk of harm.

A. The Law.

The adjudication of abuse or neglect is governed by Title Nine, which is designed to protect children. N.J.S.A. 9:6-1 to -8.114. Under Title Nine, a child is abused or neglected if:

> [a] parent or guardian . . . creates or allows to be created a substantial or ongoing risk of physical injury to such child by other than accidental means which would be likely to cause death or serious or protracted disfigurement, or protracted loss or impairment of the function of any bodily organ . . . or a child whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian . . . to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof . . . .
>
> [N.J.S.A. 9:6-8.21(c).]

The statute does not require the child to suffer actual harm. N.J.S.A. 9:6-8.21(c)(4). Instead, abuse or neglect is established when a child's "physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired." Ibid. When there is an absence of actual harm, but there

12

exists a substantial risk of imminent danger, the court must consider whether the parent exercised a minimum degree of care under the circumstances. G.S. v. Dep't of Human Servs., 157 N.J. 161, 171 (1999) (citing N.J.S.A. 9:6-8.21(c)(4)(b)).

The failure to exercise a "minimum degree of care" refers to "conduct that is grossly or wantonly negligent, but not necessarily intentional." Id. at 178 (citation omitted); see also Dep't of Child. & Fams., Div. of Youth & Fam. Servs. v. T.B., 207 N.J. 294, 306-07 (2011) (affirming the interpretation of "minimum degree of care"). "Conduct is considered willful or wanton if done with the knowledge that injury is likely to, or probably will, result." G.S., 157 N.J. at 178 (citing McLaughlin v. Rova Farms, Inc., 56 N.J. 288, 305 (1970)). A parent fails to exercise a minimum degree of care if, despite being "aware of the dangers inherent in a situation," the parent "fails adequately to supervise the child or recklessly creates a risk of serious injury to that child." Id. at 181 (citation omitted). Moreover, a "parent has the obligation to protect a child from harms that can be inflicted by another parent" or person. N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 449 (2012); N.J. Div. of Child Prot. & Permanency v. K.N.S., 441 N.J. Super. 392, 399 (App. Div. 2015).

A-2654-22

The Division must prove by a preponderance of the competent, material, and relevant evidence that a child is abused or neglected. N.J.S.A. 9:6-8.46(b). That burden of proof requires the Division to demonstrate a "probability of present or future harm." N.J. Div. of Youth & Family Servs. v. S.S., 372 N.J. Super. 13, 24 (App. Div. 2004). Title Nine cases are fact-sensitive, and the court should base its findings on the totality of the circumstances. N.J. Div. of Youth & Family Servs. v. V.T., 423 N.J. Super. 320, 329 (App. Div. 2011) (citation omitted).

The scope of our review of an appeal from an order finding abuse or neglect is limited. N.J. Div. of Child Prot. & Permanency v. Y.A., 437 N.J. Super. 541, 546 (App. Div. 2014) (citing N.J. Div. of Youth & Family Servs. v. I.Y.A., 400 N.J. Super. 77, 89 (App. Div. 2008)). We will uphold the family court's factual findings and credibility determinations if they are supported by "adequate, substantial, and credible evidence." N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007) (first citing In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993); then citing Cesare v. Cesare, 154 N.J. 394, 411-13 (1998)). Accordingly, an appellate court will only overturn the court's findings if they "went so wide of the mark that the judge was clearly mistaken." G.L., 191 N.J. at 605. We do not, however, give "special deference"

14

to the family court's interpretation of the law.  D.W. v. R.W., 212 N.J. 232, 245 (2012) (citing N.J. Div. of Youth & Family Servs. v. I.S., 202 N.J. 145, 183 (2010)).  Consequently, we apply a de novo standard of review to legal issues. Id. at 245-46 (citation omitted).

B.  The Abuse By Leon.

The family court found substantial credible evidence supporting the conclusion that Leon had sexually abused Gina.  Gina testified and described the sexual abuse in detail.  The family court then found Gina's testimony to be credible and "[v]ery consistent in the details, which were idiosyncratic and not dramatically odd or strange, just really specific."  The family court correctly found that Gina's testimony by itself established, by a preponderance of the evidence, that Gina had been sexually abused by Leon.

The Division, however, did not simply rely on Gina's credible testimony. It also provided the testimony of Dr. Lanese, Djakow, and Detective McClauslin.  Gina had reported the sexual abuse to all three of those witnesses and her reporting was consistent with her trial testimony.  Moreover, Dr. Lanese, a qualified expert, opined that Gina had been sexually abused.  Taken in totality, the evidence of Leon's sexual abuse of Gina was substantial and compelling.

A-2654-22

We reject Leon's contention that the Division failed to prove that Gina "suffered physical injuries or enduring psychological harm."  The sexual abuse of a minor is harmful.  See State v. Higginbotham, 257 N.J. 260, 275-76 (2024) (holding that distributing child pornography and sexually abusing children are interrelated, and cause "continuing harm by haunting the children in years to come[.]") (internal citation omitted); see also J.S. v. R.T.H., 155 N.J. 330, 352 (1998) (holding that a "spouse has a duty of care to take reasonable steps to prevent or warn of the harm" resulting from the sexual abuse of a child).

We also reject Leon's argument that he was unable to defend the allegations of abuse because of his pending criminal charges.  The Fifth Amendment of the United States Constitution "protects individuals from providing testimonial evidence that he or she 'reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used.'" N.J. Div. of Child Prot. & Permanency v. S.K., 456 N.J. Super. 245, 266 (App. Div. 2018) (quoting Kastigar v. United States, 406 U.S. 441, 445 (1972)).  "The touchstone of the Fifth Amendment is compulsion.  The inquiry must, therefore, focus on whether an individual has been put in a position that by its very nature is so coercive, due to either physical or psychological factors, that it compels

the individual to make an incriminatory statement involuntary." <u>In re</u> <u>Guardianship of D.J.M.</u>, 325 N.J. Super. 150, 155 (Ch. Div. 1999).

No one compelled Leon to testify. Indeed, he elected not to testify at the evidentiary hearing. It has long been recognized that while a party charged with abuse or neglect of a child has the right to invoke his or her Fifth Amendment right to silence, that right does not mean that the evidentiary hearing concerning the abuse and neglect should be delayed. <u>See</u> <u>id.</u> at 160-61. Children have a right to be protected and delaying abuse and neglect proceedings would interfere with that right. <u>Ibid.</u> In short, a parent's or guardian's right to invoke the Fifth Amendment must yield to the right of a child not to be left in limbo. <u>See</u> <u>id.</u> at 161-62.

C.    The Neglect By Ingrid.

The family court found that Ingrid repeatedly exposed Gina to harm by allowing Leon to be with Gina. In that regard, the court found that after Ingrid was aware of Gina's reports of sexual abuse by Leon, and after the SOR Order had been issued, Ingrid still permitted Leon to have contact with Gina. The court expressly found that Ingrid had received a copy of and understood the terms of the SOR Order. Those findings are all supported by substantial credible evidence.

In its definition of child abuse or neglect, Title Nine includes circumstances where a parent or guardian allows a child to be placed in a situation where the child is exposed to a "substantial risk" of harm. N.J.S.A. 9:6-8.21(c)(4)(b). Given that Leon had previously sexually abused Gina, and given that Ingrid knew of that abuse and knew of the order prohibiting Leon from having contact with Gina, the law does not require further abuse by Leon. Leon's mere presence exposed Gina to the potential for further assaults and the psychological stress of being present with her abuser. See generally New Jersey Div. of Child Prot. & Permanency v. A.D., 455 N.J. Super. 144 (App. Div. 2018) (affirming the trial court's finding that stepfather had abused stepdaughter "Nancy," after considering and relying on Nancy's history of being sexually abused).

In summary, there is substantial and credible evidence supporting the family court's finding that Leon abused Gina and that Ingrid neglected her. We, therefore, affirm all provisions of the family court's order dated October 21, 2022.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18