# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3702-19

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

A.H. and J.K.,

      Defendants,

and

F.A.,

      Defendant-Appellant.

_____

IN THE MATTER OF K.H.
and A.A., minors.

_____

Submitted October 25, 2021 – Decided July 29, 2022

Before Judges Accurso and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FN-12-0110-19.

Joseph E. Krakora, Public Defender, attorney for appellant (Susan W. Saidel, Designated Counsel, on the briefs).

Andrew J. Bruck, Acting Attorney General, attorney for respondent (Donna Arons, Assistant Attorney General, of counsel; Meaghan Goulding, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Louise M. Cho, Assistant Deputy Public Defender, on the brief).

PER CURIAM

Defendant F.A. (Felix) appeals from a December 10, 2018 fact-finding order, now final, that he abused or neglected K.H. (Kip), the nine-year-old son of his ex-girlfriend, by inflicting excessive corporal punishment in violation of N.J.S.A. 9:6-8.21(c)(4)(b).[1] Because we agree with the Division of Child Protection and Permanency, as well as the law guardian, that there is substantial credible evidence in the record to support that conclusion, we affirm — substantially for the reasons expressed in Judge Kaplan's cogent

_____

[1] These names are fictitious. We employ them to protect the child victim's privacy. See N.J.S.A. 2A:82-46(a); R. 1:38-3(d)(11).

2

A-3702-19

opinion.  See N.J. Div. of Child Prot. & Permanency v. J.L.G., 450 N.J. Super. 113, 119 (App. Div. 2015).

The facts and procedural history are meticulously set forth in the trial court's forty-one-page opinion, and we have no need to repeat them here. Suffice it to say, a counselor at Kip's summer day camp was alerted to a bruise on his thigh by another child.  The counselor reported to the Division that the reddish-brown linear bruise looked swollen and irritated, and when she asked Kip how he'd gotten it, he told her his mother had beaten him with a metal wire but asked the counselor not to tell.[2]

The Division worker assigned the case testified at the fact-finding hearing that she interviewed Kip that same day, August 9, 2018.  The worker testified to the marks she saw on the child's body, and Kip's report that his mother and Felix had "whooped" him with a phone charging cable the night before.  Although Kip's five-year-old sister A.A. (Ashley) denied ever seeing

---

[2] Judge Kaplan found Kip's mother A.H. (Audrey) also abused or neglected the nine-year-old by excessive corporal punishment in violation of N.J.S.A. 9:6-8.21(c)(4)(b).  She has not appealed.  Kip now lives with his father out-of-state.

A-3702-19

her parents hit Kip, the worker overheard her telling him on the way back from the hospital, "It's ok, [Kip], you're not going to get whooped no more."[3]

Both children told the worker they'd recently lived with their great-grandmother but had been living for the last few weeks with their mother and Felix.  Kip reported the family was staying at the home of Felix's brother in Elizabeth, where he'd been beaten with the charging cable.  Both told the caseworker their mother and Felix were at home the previous night.

The children's mother and Felix were interviewed separately by the Union County Prosecutor's Office a few weeks later.  Both reported they'd broken up some months before.  Felix told the detective he was living between his parents' house and his girlfriend's place.  He claimed he was not with the family the night Kip said he was beaten.  According to Felix, he was at his girlfriend's, and Audrey was staying with the children at his house — Audrey and Kip in the basement and Ashley upstairs in her room — because Audrey had gotten into a fight with her grandmother.  He claimed he and Audrey had stayed there with both children before.  Felix claimed he hadn't been at his brother's house in Elizabeth since the first or second week of July.

---

[3]  Ashley is Kip's half-sister; Felix is her biological father.

A-3702-19

Audrey told the detective she was living at her grandmother's house, and that Felix would occasionally keep Ashley at his parents' house, but that Kip never went there. She also reported, however, that she and the children slept at Felix's house when he wasn't there. She denied ever staying at Felix's brother's house in Elizabeth.

The worker testified Felix admitted dropping the children off at day camp the day Kip reported the beating but denied seeing any marks on the boy. Audrey likewise claimed not to have noticed the marks, telling the worker she had no idea where they'd come from and speculated he may have inflicted them himself. Both admitted they had physically punished Kip in the past but didn't do so now. Felix claimed he'd practically raised the boy but stopped disciplining him in 2014 after prior Division involvement, and because Audrey's family did not like him doing so. Both claimed Kip had been known to lie.

The only other witness at the hearing was Gladibel Medina, M.D., the medical director at the Dorothy B. Hersch Regional Child Protection Center, who testified as an acknowledged expert in pediatrics and child abuse. Dr. Medina testified she examined Kip on August 10, the day after he reported being hit with the charging cord. Dr. Medina testified she found twenty-two

abrasions on the boy's face, neck, back, arms, legs and buttocks, most "looped and linear" pattern marks, consistent with Kip's account of being beaten with a phone cord charger. Dr. Medina testified that although it was possible for Kip to have inflicted those injuries himself, it would be "[v]ery rare, unusual for someone to hit himself all those times like that." Asked about her conclusions, Dr. Medina testified "[t]he diagnosis was child physical abuse."[4]

Felix did not appear at the hearing. Neither the law guardian nor defendants called witnesses or offered any evidence.

Judge Kaplan issued his carefully reasoned opinion ten days after the hearing. He found both the Division worker and Dr. Medina reliable witnesses who testified in a clear and forthright manner. The judge discussed the witnesses' testimony at length, including their responses to questions posed on cross-examination, and made detailed findings as to why he found each "thoroughly credible." He also analyzed the statute and the controlling case law, particularly as it relates to admission of the Division's records in

---

[4] Dr. Medina also testified to what Kip reported to her in response to questions she'd put to him. Kip told her the beating was very painful, that his mother and Felix had beaten him many times before, and he was afraid to go home. Kip told her he didn't think they loved him anymore. She also related that Kip had considered running away and various means of killing himself, including "jumping backwards to give himself a concussion . . . grabbing a glass bottle and breaking it in his head," and "[t]aking a knife and stabbing his heart."

A-3702-19

evidence, see N.J.S.A. 9:6-8.46(a); R. 5:12-4(d); N.J. Div. of Child Prot. & Permanency v. N.T., 445 N.J. Super. 478, 487 (App. Div. 2016), and what constitutes corroboration of a child's prior statement sufficient to make a finding of abuse or neglect on the statement alone, see N.J. Div. of Youth & Fam. Servs. v. L.A., 357 N.J. Super. 155, 166-67 (App. Div. 2003).

Judge Kaplan found Kip's statements about the abuse he suffered at Felix's hands were corroborated by the observations of the Division worker who testified to the marks she saw on his legs, neck and back, his reported pain, "that medical treatment was needed and immediately obtained" and by Dr. Medina's conclusions that the more than twenty "linear and looped" marks and scabbing she observed on the boy the following day were consistent with Kip's account of being hit multiple times with a phone charging cable within the time frame he alleged.

The judge also explained why he rejected Felix's and Audrey's contention that the discrepancies in Kip's various accounts of the beating meant his statements were untrustworthy. Specifically, the judge found it not unusual this nine-year-old child would not "relay the events down to the minute details," in response to "vague and open-ended questions, . . . especially given the emotional toll of the incident." Judge Kaplan found the

critical parts of Kip's account of what he endured "remained consistent through no less than three interviews." He thus rejected "the invitation of defense counsel to conclude that these minor inconsistencies should cause this court to find that [Kip] is lying," given the number of "observable fresh markings across [Kip's] entire body, the presence of which is not in dispute."

The judge also rejected defendants' claims that Felix was not present when the beating took place, calling their statements on the point "self-serving and not believable." Instead, based on Kip's statements, which the judge found "both credible and corroborated," the judge found Kip was with his mother, Felix and Ashley, which was what Ashley reported as well. The judge noted Felix told investigators exactly where everyone slept that night, albeit leaving himself out, and admitted dropping both children at their day camp in the morning. Judge Kaplan found "ample evidence in the record," beyond the children's statements, to support a finding that Felix was with the family that night. The Division's failure to independently establish the abuse took place in Elizabeth at the home of Felix's brother as Kip claimed did not shake the judge's conviction the boy's account was truthful, noting Felix admitted his brother had a home in Elizabeth.

8

Weighing the evidence in light of the applicable law, the judge found the Division carried its burden to prove by the preponderance of the evidence that Felix and Audrey abused and neglected Kip "when they struck him with a phone charging cable multiple times causing articulated and observable pain and looped and linear marks and bruises on [Kip's] legs, back, and neck which required medical intervention." He found defendants' actions were intentional and deliberate and meant to inflict pain on this nine-year-old child. Judge Kaplan found the beating constituted excessive corporal punishment in accordance with N.J.S.A. 9:6-8.21(c)(4)(b), consistent with N.J. Div. of Youth & Fam. Servs. v. P.W.R., 205 N.J. 17, 33 (2011). Further, he found defendants' "use of an instrumentality, here a charging cable, with enough force to leave marks on [Kip] which caused him pain was a disproportionate response to [Kip's] staying awake past his bedtime."

Felix appeals, arguing Kip's allegations of abuse were "inconsistent and not trustworthy" as well as uncorroborated, and the court erred by improperly basing its decision on those incompetent statements, ignoring contrary evidence and "improperly filling in gaps in the evidence of its own accord." Our review of the record convinces us that none of those arguments is of

9

sufficient merit to warrant extended discussion in a written opinion. See R. 2:11-3(e)(1)(E).

Our review of the trial court's factual findings in a Title 9 abuse and neglect proceeding is limited to determining whether those findings are supported by adequate, substantial, and credible evidence in the record. N.J. Div. of Child Prot. & Permanency v. K.N.S., 441 N.J. Super. 392, 397 (App. Div. 2015). If the findings have such support in the record, as Judge Kaplan's do, we are bound by them in deciding the appeal. Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974).

Felix's main argument is that Kip's prior statements about the beating were "not sufficiently corroborated as to the essential issue of who was responsible for the alleged abuse." As Judge Kaplan made clear, however, the law is well settled that corroboration need not be offender-specific. N.J. Div. of Youth & Fam. Servs. v. Z.P.R., 351 N.J. Super. 427, 435 (App. Div. 2002). We have several times held that corroborative evidence simply need not be so direct to provide sufficient support for a child's out-of-court statements under N.J.S.A. 9:6-8.46(a). See N.J. Div. of Child Prot. & Permanency v. J.A., 436 N.J. Super. 61, 67 (App. Div. 2014); N.J. Div. of Child Prot. & Permanency v. M.C., 435 N.J. Super. 405, 424 (App. Div. 2014), superseded on other grounds

A-3702-19

N.J. Div. of Child Prot. & Permanency v. M.C., No. A-2398-12, (App. Div. Aug. 4, 2016); L.A., 357 N.J. Super. at 166; Z.P.R., 351 N.J. Super. at 435. As Judge Weissbard noted in Z.P.R., "[i]t would be a rare case where evidence could be produced that would directly corroborate the specific allegation of abuse between the child and the perpetrator." Ibid.

Accordingly, the rule is that "[c]orroborative evidence 'need only provide support for the out-of-court statements.'" N.J. Div. of Child Prot. & Permanency v. N.B., 452 N.J. Super. 513, 521 (App. Div. 2017) (quoting L.A., 357 N.J. Super. at 166). Medical testimony documenting the abuse of the sort Dr. Medina provided here, is one of the "most effective types of corroboration" in a child abuse case. Z.P.R., 351 N.J. Super. at 436 (quoting State v. Swan, 790 P.2d 610, 615-16 (1990)). Thus, there can be no question but that Kip's statements that Felix and his mother beat him on the night of August 8, 2018 with a phone charging cord were corroborated by the marks on his body and Dr. Medina's testimony that those marks were consistent with the boy being struck repeatedly with a cord or cable of that type.

Felix is also wrong to imply Kip's statements were the only basis for the decision rendered here. Although Kip's statements were certainly critical, Judge Kaplan plainly considered the totality of the proofs as our Supreme

11

Court has directed trial judges do in such cases "because the evidence can be synergistically related." P.W.R., 205 N.J. at 39. Here, both children claimed to be with their parents on the night Kip was beaten. Felix admitted having physically disciplined the boy before, but claimed he stopped doing so in 2014, after prior Division involvement and because Audrey's family disapproved. Felix also was very specific about where the family members, except him, were sleeping the night he claimed not to be with them and admitted dropping both kids at day camp the following morning. Moreover, the judge did not, as Felix argues, "ignore" the statements Felix and Audrey made that Felix was not with the family on the night Kip was beaten; he rejected them as "self-serving and not believable."

Although a child's uncorroborated hearsay statement "may not be the sole basis for a finding of abuse or neglect," P.W.R., 205 N.J. at 33, Kip's statement was corroborated and the Division only needed to show it was more likely than not that Felix participated in beating Kip with the charging cable to establish abuse and neglect here, see N.J. Div. of Youth & Fam. Servs. v. N.S., 412 N.J. Super. 593, 615 (App. Div. 2015) (noting "'[t]he evidence must demonstrate that the offered hypothesis is a rational inference, that it permits the trier[] of fact to arrive at a conclusion grounded in a preponderance of

12

probabilities according to common experience'" (quoting In re Est. of Reininger, 388 N.J. Super. 289, 298 (Ch. Div. 2006))). Because we are satisfied there is substantial credible evidence in the totality of the record to support Judge Kaplan's conclusion that Felix, more likely than not, engaged in excessive corporal punishment of Kip by hitting him repeatedly with the charging cable, we affirm — substantially for the reasons expressed in Judge Kaplan's thorough and thoughtful opinion of December 10, 2018.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3702-19